IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW BROWN and HC COMPOSITES, LLC, Inc., | : | CIVIL ACTION |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| BINSWANGER MANAGEMENT CORP. and DAVID BINSWANGER | : | |
| *Defendants*. | : | NO.  26-cv-475 |

**MEMORANDUM**

**KENNEY, J.**                                                    **June 25, 2026**

Plaintiffs Andrew Brown and HC Composites LLC, Inc. ("HC Composites") bring this suit against Defendants Binswanger Management Corporation ("BMC") and David Binswanger for wrongful use of civil proceedings and abuse of process. ECF No. 1 ("Compl."). The instant lawsuit arises out of a previous action by Binswanger Southern (N.C.) ("Binswanger Southern"), a subsidiary of BMC, against Brown and HC Composites in the Superior Court of Mecklenburg County, North Carolina that began in September 2020 and was resolved in favor of Brown and HC Composites in January 2024 (the "Underlying Action"). Compl. ¶¶ 2, 74, 143, 194–209. Before the Court is Defendants' Motion to Dismiss Plaintiffs' Complaint, ECF No. 18 (the "Motion"), Plaintiffs' response in opposition, ECF No. 21, and Defendants' reply in further support of their Motion, ECF No. 22. For the reasons set forth below, the Court will grant Defendants' Motion to Dismiss.

## I.    BACKGROUND

The facts are taken from the Plaintiffs' Complaint and are accepted as true at the motion-to-dismiss stage. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The Underlying Action, in which a subsidiary of Defendant BMC sued Plaintiffs in North Carolina,

1

arose out of a real estate commission dispute. *See* Compl. ¶ 3. Defendants believed they were owed a commission for their involvement in Plaintiffs' purchase of real property for a new manufacturing facility in Greenville, North Carolina. *Id.* ¶¶ 3, 31.

Plaintiff Andrew Brown is the owner and President of Plaintiff HC Composites, a North Carolina-based manufacturer of power catamarans under the "World Cat" brand. *Id.* ¶ 22. In 2020, HC Composites designed a new 40-foot catamaran and wanted to buy a new building to accommodate manufacturing for the new catamaran. *Id.* ¶ 28–29. Between February and April of 2020, Defendants introduced Plaintiffs to Camping World Property, Inc. ("Camping World"), a company that sells recreational vehicles.[1] *Id.* ¶¶ 30, 33. Camping World owned two properties in Greenville that it wanted to sell. *Id.* ¶¶ 34, 36. Camping World gave Defendants permission to show the first property to Plaintiffs. *Id.* ¶ 34. After seeing the first property, Plaintiffs declined to buy it. *Id.* ¶ 35. Camping World and Plaintiffs then discussed the possibility of Plaintiffs buying the second property owned by Camping World. *Id.* ¶ 36. Plaintiffs ended up purchasing the second property from Camping World on September 18, 2020. *Id.*

Because Defendants had made the initial introduction between Plaintiffs and Camping World, the seller of the property, Defendants believed they were owed a commission for Plaintiffs' purchase of the second property from Camping World. *Id.* ¶ 3. Defendants claimed that they should have been paid a commission of 6% of the value of the transaction, or $300,000. *Id.* Defendants had previously proposed that fee in an email to Plaintiffs, but it was not accepted or negotiated. *Id.* ¶ 65. Defendants had never secured a contract to represent either the buyer or the seller in the

---

[1] Defendants dispute that BMC or David Binswanger introduced Plaintiffs to Camping World, maintaining that this introduction was made by "Douglas Faris ('Faris'), an agent of Binswanger Southern (N.C.)." ECF No. 18-1 at 11–12. However, on a motion to dismiss, all factual disputes are resolved in favor of the plaintiff, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and so, the Court accepts as true, for the purpose of resolving the instant Motion only, the allegations in Plaintiffs' Complaint that Defendants introduced Plaintiffs to Camping World.

transaction. *Id.* ¶ 52. Defendants also did not secure a representation or fee agreement with Plaintiffs or Camping World. *Id.* ¶¶ 49–50. Plaintiffs allege that they never signed any "retention agreement, non-circumvent agreement, or any other form of consulting or services agreement with Binswanger." *Id.* ¶ 51.

In September 2020, Binswanger Southern, a North Carolina-based subsidiary of Defendant BMC, sued Plaintiffs in the Superior Court of Mecklenburg County, North Carolina. *Id.* ¶ 74. Binswanger Southern claimed that it was entitled to recover a 6% commission from the real estate transaction between Plaintiffs and Camping World under a theory of quantum meruit and unjust enrichment because it had introduced Plaintiffs to the company that later sold them the property. *Id.* ¶¶ 13, 77. Binswanger Southern also brought claims against Plaintiffs for engaging in Unfair and Deceptive Trade Practices ("UDTP") and taking part in a civil conspiracy to fraudulently deprive Binswanger Southern of a commission fee. *Id.* ¶¶ 85–86. On November 7, 2022, the Superior Court of Mecklenburg County, North Carolina, dismissed with prejudice the claims against Brown and HC Composites. *Id.* ¶¶ 110, 126, 129; ECF No. 1-1 at 44. In December 2023, the North Carolina Superior Court granted HC Composites' motion for attorneys' fees and ordered Binswanger Southern to pay over $100,000 to HC Composites. Compl. ¶ 6. In awarding attorneys' fees to HC Composites, the North Carolina court noted that "while there is an arguable claim that the allegation of quantum meruit was not itself frivolous, the decision to use these circumstances to make serious and damaging accusations of UDTP against a business and its executive manager simply cannot be justified." *Id.* ¶ 150 (quoting ECF No. 1-2 at 4).

On December 12, 2022, Binswanger Southern appealed the North Carolina Superior Court decision but subsequently voluntarily withdrew its appeal on January 25, 2024. *Id.* ¶¶ 141, 143.

The voluntary withdrawal of Binswanger Southern's appeal signified the final resolution of the Underlying Action in favor of HC Composites and Brown. *Id.* ¶ 196.

Two years after the conclusion of the Underlying Action, on January 23, 2026, Plaintiffs Andrew Brown and HC Composites filed the instant malicious prosecution civil action against Defendants BMC and David Binswanger. *See id.* Plaintiffs bring two separate counts against Defendants. In Count I, Plaintiffs allege that Defendants engaged in wrongful use of civil proceedings in violation of the Dragonetti Act, 42 Pa. Cons. Stat. §§ 8351–54, when they "initiated and continued" the Underlying Action against Plaintiffs without "probable cause" and "for improper purposes, including coercing payment of a fee . . . to which [Defendants] knew they had no lawful entitlement." *Id.* ¶¶ 195, 197–99. In Count II, Plaintiffs allege that Defendants engaged in abuse of process when, during the Underlying Action, they used litigation to "coerce payment" from Plaintiffs without "any legal justification for doing so." *Id.* ¶¶ 204, 206. As a result of Defendants' actions, Plaintiffs claim they "suffered substantial damages, including but not limited to attorneys' fees, costs, loss of time, emotional distress, and severe reputational harm." *Id.* ¶¶ 207.

On April 27, 2026, Defendants moved to dismiss Plaintiffs' Complaint for failure to state a claim and on statute of limitations grounds. ECF No. 18. After obtaining an extension from the Court, *nunc pro tunc*, Plaintiffs filed their opposition to the Motion on May 22, 2026. ECF Nos. 20, 21. Defendants filed a reply in further support of their Motion on June 1, 2026. ECF No. 22. Accordingly, the Motion is fully briefed and ripe for adjudication.

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v.*

4

*Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (citation omitted). A complaint is plausible on its face when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Additionally, courts must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

"A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.* (cleaned up) (citation omitted). The court may also "consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Keystone Redev. Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (internal quotations and citation omitted).

## III.    **DISCUSSION**

Defendants move to dismiss Plaintiffs' Complaint for failure to state a claim and on statute of limitations grounds with respect to Count II. ECF No. 18. Because Plaintiffs fail to state a claim for malicious prosecution under North Carolina law and Plaintiffs' abuse of process claim is time-

barred, the Court will grant the Motion to Dismiss and will dismiss Plaintiffs' Complaint without prejudice.

**A. Plaintiffs Fail to State a Malicious Prosecution Claim Under North Carolina Law**

This action was brought on the basis of diversity jurisdiction in a federal court located in Pennsylvania. Compl. ¶¶ 16–20. Therefore, Pennsylvania's choice-of-law rules govern whether North Carolina law or Pennsylvania law applies to Plaintiffs' malicious prosecution claim. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (stating that a federal court sitting in diversity must apply the choice-of-law rules of the forum state when determining which state's substantive law governs). Pennsylvania courts explicitly reject the traditional *lex loci delicti* doctrine which dictates that the law of the state where the tort took place governs. *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805 (Pa. 1964). Instead, Pennsylvania courts apply a "state of most significant relationship" test. *Id.* at 802–03. Thus, Plaintiffs' contention that the tortious conduct took place in Pennsylvania will not be dispositive under Pennsylvania's choice of law rules. *See* ECF No. 21 at 13–14. The Court must proceed to apply Pennsylvania's "state of most significant relationship" test. *Griffith*, 203 A.2d at 801–05.

The first step of Pennsylvania's choice-of-law analysis is to ask whether there is an actual conflict between the laws of the two states in question. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007); *McDonald v. Whitewater Challengers, Inc.*, 116 A.3d 99, 106 (Pa. Super. Ct. 2015). An actual conflict exists when the two "states would actually treat this issue any differently." *Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co.,* 272 F. Supp. 2d 482, 490 n.9 (E.D. Pa. 2003). If an actual conflict exists, then the court must "classify the conflict as 'true,' 'false,' or an 'unprovided-for' situation." *Hammersmith*, 480 F.3d at 230.

6

A true conflict exists when the "governmental interests of both jurisdictions would be impaired if their law were not applied." *Id.* (quoting *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 n.15 (3d Cir. 1991)). For example, the Supreme Court of Pennsylvania found a true conflict between Pennsylvania and Delaware tort law in an action arising out of an automobile accident. *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970). Pennsylvania had a "plaintiff-protecting rule" whereas Delaware had adopted a "defendant-protecting rule." *Id.* Thus, Pennsylvania's interest in protecting plaintiffs would be impaired if the Delaware law were applied, and Delaware's interest in protecting defendants would be impaired if the Pennsylvania law were applied. *Id.*

If there is a true conflict, the court must then determine which state has the "most significant contacts or relationships with the particular issue" and apply the law of that state. *Hammersmith*, 480 F.3d at 230 (quoting *Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166, 170 (3d Cir. 2005)). However, a false conflict occurs when "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's laws." *Id.* (quoting *Lacey*, 932 F.2d at 187); *see, e.g., Lacey*, 932 F.2d at 188 (finding a false conflict where "Pennsylvania's interest in deterring the manufacture of defective products" would be impaired if the more manufacturer-friendly British Columbia rule was applied instead of the Pennsylvania strict liability rule, but "British Columbia's interest in fostering industry within its borders" would not be impaired by applying Pennsylvania's strict liability rule to U.S. manufacturers in a U.S. court). If there is a false conflict, "the law of the state whose interests would be harmed if its laws were not applied" governs. *Hammersmith*, 480 F.3d at 230 (citation omitted).

An "unprovided-for" case is when "neither state's interests would be impaired if its laws were not applied." *Id.* at 230 n.9 (citing *Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 220 (3d Cir. 2005)). If there is an unprovided-for case, the substantive law of the place where the tort took

7

place applies, pursuant to the traditional *lex loci delicti* conflict of laws doctrine. *Id.; Garcia*, 421 F.3d at 220.

Turning to the present action, the Court conducts the choice-of-law analysis by first determining whether there is an actual conflict between Pennsylvania law and North Carolina law with regard to malicious prosecution. The inquiry is "whether these states would actually treat this issue any differently." *Air Prods. & Chems., Inc.*, 272 F. Supp. 2d at 490 n.9. Here, there is an actual conflict because a claim for malicious prosecution based on a prior civil proceeding under North Carolina law has materially different elements than an action for wrongful use of civil proceedings under the Dragonetti Act in Pennsylvania.

Under North Carolina law, the elements for a malicious prosecution claim based on a prior civil proceeding are "that the defendant '(1) instituted, procured or participated in the . . . proceeding against [the] plaintiff; (2) without probable cause; (3) with malice; (4) the prior proceeding terminated in favor of [the] plaintiff'" and (5) that the plaintiff suffered "special damages." *Fuhs v. Fuhs*, 782 S.E.2d 385, 388 (N.C. Ct. App. 2016) (quoting *Hill v. Hill*, 545 S.E.2d 442, 451 (N.C. Ct. App. 2001) (Tyson, J., dissenting), *rev'd for the reasons stated in dissenting opinion*, 553 S.E.2d 679 (N.C. 2001)). In Pennsylvania, the common law action for malicious prosecution, also known as malicious use of civil proceedings, has been codified by the Dragonetti Act, 42 Pa. Cons. Stat. §§ 8351, *et seq.*, enacted in 1980. *See Peek v. Whittaker*, No. 2:13-cv-O1188, 2014 WL 2154965, at *4 (W.D. Pa. May 22, 2014). The elements of an action for malicious prosecution as set out in the Dragonetti Act are that the defendant (1) "takes part in the procurement, initiation or continuation of civil proceedings against another," (2) "acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are

8

based," and (3) "the proceedings have terminated in favor of the person against whom they are brought." 42 Pa. Cons. Stat. § 8351(a).

When comparing the elements for a malicious prosecution action under both North Carolina and Pennsylvania law, the Court notes that the requirement for "special damages" is an element under North Carolina law but is not present under Pennsylvania law. Special damages in North Carolina require showing a "substantial interference either with the plaintiff's person or his property" such as an "arrest of his person" or "seizure of his property" that resulted from the prior civil proceeding and "would not necessarily result in all similar cases." *Stanback v. Stanback*, 254 S.E.2d 611, 625 (N.C. 1979). Further examples of special damages include "causing execution to be issued against the plaintiff's person, causing an injunction to issue prohibiting plaintiff's use of his property in a certain way, causing a receiver to be appointed to take control of plaintiff's assets, causing plaintiff's property to be attached," and "causing plaintiff to be wrongfully committed to a mental institution." *Id.* (citations omitted). However, "injury to . . . reputation, embarrassment, loss of work and leisure time," and "expenses in defending the claim" are not sufficient to establish special damages. *Fuhs*, 782 S.E.2d at 389 (quoting *Stikeleather v. Willard*, 348 S.E.2d 607, 608–09 (N.C. Ct. App. 1986)).

Under Pennsylvania law, damages are not mentioned in any of the elements of a malicious prosecution action under the Dragonetti Act. *See* 42 Pa. Cons. Stat. § 8351. The Dragonetti Act lists the types of damages that plaintiffs may recover for succeeding in a malicious prosecution action. *Id.* § 8353. This list includes, *inter alia*, reputational harm,[2] litigation expenses, and

---

[2] The reputational harm alleged must be the result of "defamatory matter alleged as the basis of the proceedings." 42 Pa. Cons. Stat. § 8353(2). This Court does not need to reach the question of whether the allegations in the Underlying Action constituted "defamatory matter" because "emotional distress" is also a valid type of damages permitted under the Dragonetti Act and Plaintiffs have alleged that they suffered "emotional distress" in their Complaint. *Id.* § 8353(5); Compl. ¶ 71.

emotional distress from the proceedings. *Id.* However, the Dragonetti Act does not specify that any of these types of damages must be proved as an essential element of the malicious prosecution action itself; rather, it lists what the "plaintiff is entitled to recover" once the elements of the action listed in § 8351 have been established. *Id.*

Therefore, the requirement for special damages under the law of one of the two states but not the other creates a real conflict between North Carolina law and Pennsylvania law, as the laws of each state would "treat the same situation differently." *Air Prods. & Chems., Inc.*, 272 F. Supp. 2d at 490 n.9. Plaintiffs' allegations likely suffice to state a claim for malicious prosecution under Pennsylvania law. Plaintiffs allege that Defendants "initiated . . . civil proceedings" against Plaintiffs, "lacked probable cause" to assert their claims, and continued the proceedings "for improper purposes," and that the proceedings terminated in favor of Plaintiffs. Compl. ¶¶ 195–99. These allegations, if true, would satisfy the three elements of a malicious prosecution action under Pennsylvania law: that the defendant  (1) "takes part in the procurement, initiation or continuation of civil proceedings against another," (2) "acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based," and (3) "the proceedings have terminated in favor of the person against whom they are brought." 42 Pa. Cons. Stat. § 8351(a). As explained, the "emotional distress" alleged in the Complaint falls within the category of damages for "emotional distress" that is specified in § 8353. *Id.* § 8353(5); Compl. ¶ 71. However, under North Carolina law, the allegations in the Complaint are insufficient as a matter of law to state a claim for malicious prosecution. North Carolina law requires special damages to be alleged as an element of a malicious prosecution claim, but Plaintiffs do not allege any special damages in

their Complaint, such as "seizure of property" or an injunction interfering with Plaintiffs' use of their property. *See Stanback*, 254 S.E.2d at 625; Compl. ¶¶ 194–202.

Having determined that a conflict exists between North Carolina law and Pennsylvania law with respect to the elements of a malicious prosecution claim, the Court next analyzes whether the conflict is a true or a false conflict. *See Hammersmith*, 480 F.3d at 232. To determine whether the conflict is a true or a false one, courts examine the governmental interest that each state has in applying its own law and whether that interest would be harmed if the other state's law were to be applied. *Id.* at 230. In an analogous case, when determining whether Pennsylvania or New Jersey law should apply to a malicious prosecution claim, a district court in this Circuit found that "Pennsylvania has an interest in protecting its citizens from being maliciously prosecuted in other states." *A-G Adm'rs v. Durham Life Ins. Co.*, No. 96-cv-2053, 1996 WL 494154, at *5 (E.D. Pa. Aug. 22, 1996). The court in *A-G Adm'rs* also noted that by making it harder to sue for malicious prosecution, New Jersey had a conflicting interest in "encourag[ing] citizens to seek redress in its courts without fearing that they will be sued for damages if they are unsuccessful." *Id.*

In the instant case, the Court infers that similar to New Jersey, North Carolina, by insisting on a higher bar to maintain suits for malicious prosecution through the special damages requirement, has an interest in encouraging citizens to seek redress in its courts without undue fear of subsequent malicious prosecution cases against them if they are unsuccessful. This interest would be harmed if plaintiffs in North Carolina courts could later be sued in another state for their conduct in the prior North Carolina lawsuit when their conduct would not suffice to support a malicious prosecution claim under North Carolina law. Thus, North Carolina's interest would be impaired if Pennsylvania law were to be applied in this case.

11

The Court then asks whether Pennsylvania has an interest that would be impaired if North Carolina law were applied. The Court determines that Pennsylvania does not have such an interest. Courts in this district have held that "Pennsylvania has an interest in protecting its citizens from being subjected to the malicious use of the process of another state." *Denenberg v. Am. Fam. Corp. of Columbus, Ga.*, 566 F. Supp 1242, 1248 (E.D. Pa. 1983), *superseded on other grounds, McGee v. Feege*, 535 A.2d 1020 (Pa. 1987); *see also Rosen v. Tesoro Petroleum Corp.*, 582 A.2d 27, 31 (Pa. Super. Ct. 1990) (stating that Pennsylvania has an interest in protecting its own citizens from having to "spend time and money defending themselves" from malicious prosecution suits in courts of other states). But there is no case law supporting Plaintiffs' contention that this interest extends to cases where a Pennsylvania citizen was the *plaintiff* of an underlying action in another state against citizens of that state. *See* ECF No. 21 at 14. Plaintiffs do not cite any cases to support their proposition that "Pennsylvania has a paramount interest in deterring its own corporations and their executives from weaponizing litigation" against citizens of other states in the courts of other states. *Id.* When the underlying action takes place in a foreign state against non-Pennsylvania defendants, its connection to Pennsylvania's interest in discouraging "weaponizing litigation" is too weak to constitute an "interest" that could be harmed by the application of another state's law.

Therefore, the Court agrees with Defendants that "Pennsylvania has no interest in punishing its own citizens for the malicious use of another state's legal process against citizens of that [foreign] state." ECF No. 18-1 at 20. Because Pennsylvania's interest would not be harmed by the application of North Carolina law with respect to malicious prosecution claims, a false conflict exists. And since this is a false conflict, the Court applies "the law of the state whose interests would be harmed if its laws were not applied." *Hammersmith*, 480 F.3d at 230 (quoting *Lacey*, 932 F.2d at 187). Here, only North Carolina has an interest that would be impaired if

Pennsylvania law were to be applied. Therefore, North Carolina law governs Plaintiffs' malicious prosecution claim.

But even assuming, *arguendo*, that Pennsylvania's general interest in punishing its own citizens for malicious prosecution is a legally sufficient interest to create a true conflict, North Carolina law would still apply. That is because if there is a true conflict, Pennsylvania courts apply a balancing test to determine which state has a greater interest that would be impeded by applying another state's law. *Id.* at 232. Here, North Carolina has a much greater interest that would be impeded by applying Pennsylvania law. In *Denenberg*, the district court opined that even though "Pennsylvania has an interest in protecting its citizens from being subjected to the malicious use of the process of another state, this interest is not as weighty as that of New York in regulating the use of its process and in determining when its judicial system is maliciously used." 566 F. Supp. at 1248. Pennsylvania's purported interest in *punishing* its own citizens for abusing the process of another state is weaker than Pennsylvania's interest in *protecting* its own citizens from being maliciously prosecuted in other states. Therefore, if Pennsylvania's interest in *protecting* its own citizens from malicious prosecution in another state is weaker than the other state's interest in "regulating the use of its process," then Pennsylvania's purported interest in *punishing* its own citizens for abusing the process of another state is certainly weaker than the other state's interest in "regulating the use of its process." *See id.*

When there is a true conflict, courts apply the law of the state with a "greater interest in the application of its law." *Hammersmith*, 480 F.3d at 231 (quoting *Cipolla*, 267 A.2d at 856). If a true conflict exists here, North Carolina has a greater interest than Pennsylvania because the Underlying Action took place in North Carolina and the named parties of the Underlying Action were all North Carolina citizens. ECF No. 1-1 at 2. North Carolina's interest in "regulating the use

of its process" in an action that exclusively involved North Carolina citizens as named parties is greater than Pennsylvania's purported interest in discouraging its own citizens from participating in abusive lawsuits against citizens of other states in the courts of other states. Accordingly, even if a true conflict exists, North Carolina law would still govern.

Since this Court has determined that North Carolina law governs the Plaintiffs' malicious prosecution claim, the next step is to ask whether Plaintiffs have alleged facts that would support a claim for malicious prosecution under North Carolina law. Plaintiffs have not. North Carolina law requires the showing of "special damages" as an element of a malicious prosecution claim based on a prior civil proceeding. *Fuhs*, 782 S.E.2d at 389 (citing *Stanback*, 254 S.E.2d at 625). Special damages require showing a "substantial interference either with the plaintiff's person or his property" such as an "arrest of his person" or "seizure of his property" that resulted from the prior civil proceeding and "would not necessarily result in all similar cases." *Stanback*, 254 S.E.2d at 625.

Plaintiffs do not plead any facts that would be sufficient to satisfy the "special damages" requirement that is needed to sustain an action for malicious prosecution under North Carolina law. In their Complaint, Plaintiffs allege that Biswanger Southern's litigation against them led to "substantial damages" to Plaintiffs. Compl. ¶¶ 156–80. The alleged damages include attorneys' fees, litigation expenses, lost time, emotional distress, reputational harm, and harm to future business opportunities. *Id.*

Plaintiffs argue that the "permanent disclosure obligations" resulting from the Underlying Action are "concrete, ongoing impairments of Brown's ability to use his property." ECF No. 21 at 16. The "property" interests referred to are Brown's "hard built career, his executive standing, and his ownership of HC Composites." *Id.* Injury to Brown's career and his executive standing,

14

although it may be concrete, is nonetheless a reputational injury because all of the alleged harm arises from a diminishment of Brown's reputational standing as a result of being accused of UDTP and civil conspiracy in the Underlying Action. "[I]njury to his reputation," no matter how concrete, is not sufficient to show special damages under North Carolina law. *Fuhs*, 782 S.E.2d at 389 (quoting *Stikeleather*, 348 S.E.2d at 608). The alleged injury to Brown's ownership of HC Composites is that the company may be subject to some additional disclosure obligations if it were to undertake certain hypothetical transactions in the future. Compl. ¶¶ 168–71. However, damage to future prospects of a company is not the sort of "substantial interference either with the plaintiff's person or his property" such as an "arrest of his person" or "seizure of his property" contemplated by North Carolina's special damages requirement. *Stanback*, 254 S.E.2d at 625.

Plaintiffs' Complaint does not allege facts that, if true, would entitle Plaintiffs to relief for malicious prosecution under North Carolina law. Therefore, the Court will dismiss Count I of the Complaint. Because the Court is dismissing Count I for failure to state a claim, it will decline to address Defendants' other arguments in their Motion, including whether the Complaint fails to state a malicious prosecution claim under Pennsylvania Law, whether the named Defendants "took part" in the Underlying Action, and whether the fact that the Underlying Action survived a motion to dismiss rebuts the lack of probable cause needed to establish a malicious prosecution claim. *See* ECF No. 18-1 at 25–28.

**B. Plaintiffs' Abuse of Process Claim is Time-Barred**

Plaintiffs' abuse of process claim (Count II) is time-barred under both Pennsylvania and North Carolina law. Both states accept the "last tortious act" rule for when the limitations period for an abuse of process claim begins to run, so that the statute of limitations begins to run at the time of the last tortious act, not when there is a final favorable resolution in the prior

15

proceeding. *Fox v. City of Greensboro*, 866 S.E.2d 270, 288–89 (N.C. Ct. App. 2021) (explicitly rejecting the rule that the statute of limitations period does not commence until "termination of the acts which constitute the abuse complained of" in favor of the rule that "the limitations period commences upon the last tortious act about which Plaintiffs complained"); *Hvidzak v. Linn*, 190 A.3d 1213, 1229 (Pa. Super. Ct. 2018) ("[T]he statute of limitations for abuse of process begins running not when the underlying action terminates in the plaintiff's favor, but when the defendant uses legal process against the plaintiff for an improper purpose, which in turn causes harm to the plaintiff.").

The "last tortious act" is the last act where "the defendant uses legal process against the plaintiff for an improper purpose." *Hvidzak*, 190 A.3d at 1229. When the conduct complained of is a "continuing practice," the complaint must allege an "act evidencing the continuing practice falls within the limitations period." *Langman v. Keystone Nat'l Bank & Trust Co.*, 672 F. Supp. 2d 691, 697 (E.D. Pa. 2009) (citation omitted). The statute of limitations period cannot be extended by a claim that "defendants' acts *before* the statute of limitations period continued to harm [the plaintiff] *during* [the statute of limitations] period." *Id.* at 698. The complaint must allege "affirmative acts of the defendants" by showing that "defendants did *something* [] that abused process" within the statute of limitations period. *Id.* at 697–98 (citation omitted).

Plaintiffs' argument that the statute of limitations did not begin to run on the abuse of process claim until the final termination of the Underlying Action in Plaintiffs' favor fails. *See* ECF No. 21 at 28. In North Carolina, the court explicitly rejected the theory that the statute of limitations period does not commence until "termination of the acts which constitute the abuse complained of" and adopted the rule that "the limitations period commences upon the last tortious act about which Plaintiffs complained." *Fox*, 866 S.E.2d at 288–89. Likewise, Pennsylvania courts

have also rejected the argument that the statute of limitations period for abuse of process claims does not commence until the termination of the underlying action. *Hvizdak*, 190 A.3d at 1229 (holding that "the statute of limitations for abuse of process begins running not when the underlying action terminates in the plaintiff's favor, but when the defendant uses legal process against the plaintiff for an improper purpose").

Plaintiffs' argument that Defendants' continuing conduct of maintaining an appeal into the statute of limitations period makes the abuse of process claim timely is of no avail. *See* ECF No. 21 at 29–30. Plaintiffs argue in their opposition brief that Defendants' filing of their notice of appeal constituted the ongoing tortious conduct of maintaining an abusive appeal that only concluded when the appeal was withdrawn. *Id.* However, the Complaint merely alleges that Defendants "filed" an appeal on December 12, 2022; it does not allege any ongoing conduct by Defendants after that date. Compl. ¶¶ 141–43. To state a cause of action that is facially timely, the Complaint would have had to allege some further tortious use of process within the statute of limitations period. The term "process" includes "the entire range of procedures incident to the litigation process," such as "discovery proceedings, the noticing of depositions and the issuing of subpoenas." *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993) (quoting *Nienstedt v. Wetzel*, 651 P.2d 876, 880 (Ariz. Ct. App. 1982)); *Moity v. Richard*, 476 So.2d 573, 574–75 (La. Ct. App. 1985)).

Since both North Carolina law and Pennsylvania law accept the "last tortious act" rule, there is no conflict on this point. And, although North Carolina and Pennsylvania have different statutes of limitations for abuse of process claims—North Carolina provides a three-year limitations period whereas Pennsylvania provides a two-year limitations period—this difference is not material because the Complaint is not timely under either state's statute of limitations. *See*

*Fox*, 866 S.E.2d at 289 (stating "the tort of abuse of process has a three-year limitations period" under North Carolina law); *Hvizdak*, 190 A.3d at 1229 (stating that a claim for abuse of process "must be commenced within two years" under Pennsylvania law) (citation omitted).

The last plausible tortious act alleged in the Complaint was the filing of an appeal by Defendants on December 12, 2022. Compl. ¶ 141. The statute of limitations for an abuse of process claim arising from that appeal expired on December 12, 2024 under Pennsylvania law and on December 12, 2025 under North Carolina law. Plaintiffs' Complaint was filed on January 23, 2026. *See id.* As such, Plaintiffs' abuse of process claim is not timely under either the North Carolina or Pennsylvania statute of limitations. Therefore, the Court will dismiss Plaintiffs' abuse of process claim. Because the Court is dismissing Count II on the basis that the claim is time-barred, it will decline to address Defendants' other arguments in their Motion, including that the claim fails to state a viable claim for relief. *See* ECF No. 18-1 at 30–32.

## IV.    CONCLUSION

For the reasons set forth above, the Court will grant Defendants' Motion to Dismiss (ECF No. 18) in full. Plaintiffs' Complaint will be dismissed in its entirety without prejudice. An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**

18