**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANDREW BROWN and HC COMPOSITES, L.L.C.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | **NO. 26-cv-00475** |
| **v.** | : | |
| **BINSWANGER MANAGEMENT CORP. and DAVID BINSWANGER,** | : | |
| **Defendants.** | : | |

# MEMORANDUM OPINION

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 26) (the "Motion"). Upon consideration of the Motion, Plaintiffs' Response in Opposition (ECF No. 27) and the Reply (ECF No. 29) thereto, and following oral argument on the Motion, and for the reasons stated on the record during the hearing and set forth in greater detail in this Memorandum Opinion, the Motion will be granted as follows.

## I. BACKGROUND

This matter arises from a North Carolina state court action in which a subsidiary of Defendant Binswanger Management Corporation, Binswanger Southern (N.C.), sued Plaintiffs over a commission fee that Binswanger Southern believed it was entitled to. The Superior Court of Mecklenburg County, North Carolina resolved the underlying action in favor of Plaintiffs and entered judgment on November 16, 2022. *See* ECF No. 25 ¶¶ 142, 180. Binswanger Southern served a Notice of Appeal of the judgment on December 12, 2022, but voluntarily withdrew its appeal on January 24, 2024. *Id.* ¶¶ 181, 186. During the pendency of the appeal, Plaintiffs moved for and were granted attorneys' fees and costs on December 13, 2023. *Id.* ¶¶ 172-75, 185. Plaintiffs allege that also while the appeal was pending, Binswanger "transmitted settlement demands and

other communications to Plaintiffs and their counsel for the purpose of coercing payment, including communications transmitted on or after January 23, 2024." *Id.* ¶ 187.

On January 23, 2026, Plaintiffs filed the instant action in this Court for wrongful use of civil proceedings under Pennsylvania's Dragonetti Act and abuse of process. *See* ECF No. 1. On June 25, 2026, the Honorable Chad F. Kenney granted Defendants' first Motion to Dismiss and dismissed Plaintiffs' Complaint without prejudice. *See Brown v. Binswanger Mgmt. Corp.*, No. 26-cv-475, 2026 WL 1840546, at *9 (E.D. Pa. June 25, 2026). In their Amended Complaint, Plaintiffs again assert claims for abuse of process (Count I) and wrongful use of civil proceedings under the Dragonetti Act (Count II), but add as Count III in the alternative, a malicious prosecution claim under North Carolina law. *See* ECF No. 25 ¶¶ 258-91. On August 10, 2026, Defendants filed their second Motion to Dismiss which is now before the Court.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). "Although the plausibility standard does not impose a probability requirement . . . it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully," and "[a] complaint that pleads facts merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal citations and punctuation omitted). "When there are well-pleaded factual allegations, [the] court should assume their

veracity . . ." *Iqbal*, 556 U.S. at 679. However, allegations that "are no more than conclusions, are not entitled to the assumption of truth." *Id.*

## III. ANALYSIS

The Motion presents three issues. First, whether any new allegations in Plaintiffs' Amended Complaint require the Court to find that Pennsylvania law, not North Carolina law, applies to Plaintiffs' malicious prosecution claim. Second, if North Carolina law applies, whether Plaintiffs' Amended Complaint sufficiently alleges special damages, a requirement to state a claim for malicious prosecution. And third, whether Plaintiffs have pleaded an act of abuse of process sufficient to state a claim, and whether that act falls within the applicable limitations period. The Court will address each in turn.

### A. Choice of Law and Application to Dragonetti Act Claim (Count II)

The Court finds that North Carolina law governs Plaintiffs' claim for malicious prosecution, and any new allegations in the Amended Complaint do not warrant a different conclusion from the one reached by Judge Kenney.

The Parties do not appear to dispute that a conflict exists between the malicious prosecution laws of Pennsylvania and North Carolina because North Carolina requires that a plaintiff plead special damages and Pennsylvania does not. *See Brown*, 2026 WL 1840546, at *5 (concluding that a real conflict exists between North Carolina law and Pennsylvania law). Rather, the dispute involves whether this conflict is a "true" or a "false" conflict. Consistent with Judge Kenney's Order on the first Motion to Dismiss, Defendants believe it is a false conflict and that North Carolina's interests would be harmed if its law was not applied. Plaintiffs urge us to revisit Judge Kenney's analysis in light of the Amended Complaint and to find that it is a true conflict. Plaintiffs further contend that after finding a true conflict exists, the Court should find Pennsylvania law

applies as the law of the state with "the more significant relationship to the precise issues in dispute." *See* ECF No. 27 at 15-17.

Plaintiffs' attempt to "reframe" Pennsylvania's interest through the Amended Complaint does not convert the false conflict here into a true conflict. According to Plaintiffs, Pennsylvania's Dragonetti Act regulates conduct. *See id.* at 15. Therefore, the place of Defendants' conduct "carries peculiar significance" and here, "Pennsylvania actors conceived, authorized, funded, and directed the wrongful litigation from BMC's Philadelphia headquarters, and retained and paid North Carolina counsel through BMC." *See id.* at 14-15. Plaintiffs then conclude that this "locus" to Pennsylvania "establishes a cognizable Pennsylvania interest." *See id.* at 15. Specifically, it appears that the interest Plaintiffs are referring to is Pennsylvania's interest "in deterring tortious conduct within its borders by its own citizens." *See id.* at 14. But Plaintiffs fail to explain how this deterrence interest is different from Pennsylvania's interest in "discouraging weaponizing litigation" which Judge Kenney found "too weak" to constitute a cognizable interest that would be harmed if North Carolina law was to apply. *See Brown*, 2026 WL 1840546, at *6. Without more, Plaintiffs' attempt to "reframe" the interest by detailing Pennsylvania conduct does not create a "true" conflict. *Cf. Denenberg v. Am. Fam. Corp. of Columbus, Ga.*, 566 F. Supp. 1242, 1249 (E.D. Pa. 1983), *superseded on other grounds*, *McGee v. Feege*, 535 A.2d 1020 (Pa. 1987) ("That some of the conduct evidencing defendants' malicious intent occurred in Pennsylvania does not require application of Pennsylvania law in preference to New York.").

Moreover, even if a "locus" to Pennsylvania could establish a cognizable interest here and a true conflict exists, North Carolina law would still apply because by requiring special damages to state a claim, North Carolina has a much greater interest in regulating and determining when its judicial system is maliciously used. *Cf. id.* (recognizing that by requiring an arrest or seizure of

person or property to state a malicious prosecution claim, New York has an interest in regulating the use of its process and judicial system that outweighed Pennsylvania's interest in protecting its citizens); *A-G Adm'rs v. Durham Life Ins. Co.*, No. 96-2053, 1996 WL 494154, at *5 (E.D. Pa. Aug. 22, 1996) (finding that "Pennsylvania has an interest in protecting its citizens from being maliciously prosecuted in other states" but that by requiring a "special grievance," New Jersey has a stronger interest in "encourag[ing] citizens to seek redress in its courts without fearing that they will be sued for damages").

Accordingly, even if the Court were to find that Pennsylvania has an interest, applying Pennsylvania's less stringent standard to determine whether Defendants maliciously used North Carolina's judicial system would harm North Carolina's interests "in allowing more latitude to those who bring their cases" in North Carolina courts. *Cf. Durham Life Ins. Co.*, 1996 WL 494154, at *5. Accordingly, North Carolina law applies, and Plaintiffs' claim under the Dragonetti Act (Count II) must be dismissed.

### B. Failure to Plead Special Damages and Dismissal of Claim for Malicious Prosecution (Count III)

The Amended Complaint fails to plead special damages to state a claim for malicious prosecution under North Carolina law. Special damages consist of a "substantial interference either with the plaintiff's person or his property." *Alexander v. Alexander*, 567 S.E.2d 211, 213 (N.C. Ct. App. 2002) (citing *Stanback v. Stanback*, 254 S.E.2d 611, 625 (N.C. 1979)). For example, special damages may include "causing an injunction to issue prohibiting plaintiff's use of his property in a certain way" or "causing plaintiff's property to be attached." *See Stanback*, 254 S.E.2d at 625; *see also Brown v. Averette*, 313 S.E.2d 865, 867 (N.C. Ct. App. 1984) (finding that a cloud on plaintiff's title to her property that prevented plaintiff from conveying the land to her son or using the land to profit from tobacco farming constituted a special damage). The gist of special damages

is that they are damages that "would not necessarily result in all similar cases." *See Stanback*, 254 S.E.2d at 625. Critically, injury to reputation, embarrassment, and "good name" are not special damages. *See Stikeleather v. Willard*, 348 S.E.2d 607, 608 (N.C. Ct. App. 1986); *Fuhs v. Fuhs*, 782 S.E.2d 385, 389 (N.C. Ct. App. 2016).

Here, Plaintiffs maintain that their special damage is "the substantial interference with the transfer of and profit from . . . Brown's ownership interest in HC Composites and of HC Composites itself." *See* ECF No. 25 ¶ 218. According to Plaintiffs, they have an "obligation to disclose and explain" Defendants' fraud-based allegations in connection with a public offering or sale of HC Composites. *See id.* ¶¶ 208-09. By disclosing the fraud-based allegations, Plaintiffs contend they will face disadvantages in business dealings and "the resulting impairment of the transferability and value of Brown's ownership interest in HC Composites and of HC Composites itself." *See id.* ¶ 218.

Plaintiffs' harms do not rise to the level of special damages. At best, Plaintiffs' damages consist of harm to reputation or "good name" which may result in economic injury. Plaintiffs are not contending that Defendants directly interfered with Plaintiffs' right to earn a livelihood such that their license to do business has been revoked. *See Hawkins v. Webster*, 337 S.E.2d 682, 685 (N.C. Ct. App. 1985) (observing that allegations of "loss of livelihood and business" may provide a colorable basis for special damages, however, it is primarily limited to situations where the prior action causes a "direct interference with the right to earn a livelihood"). Instead, Plaintiffs' anticipated harms sound in reputational damage. *See* ECF No. 25 ¶ 215 ("[Brown] retained a ***reputational*** management consultant to assess and begin remediating the permanent digital record of Defendants' fraud allegations.") (emphasis added). This is bolstered by the fact that, while categorized as "additional damages to Brown," Plaintiffs allege the same impairment to Brown's

"future professional and transactional opportunities, including his ability to participate in sales, acquisitions, financings, board service, and public-company transactions" and appear to attribute this impairment to "severe and lasting reputational harm." *See id.* ¶ 227. Without more, the Court cannot conclude that Plaintiffs have special damages such that there has been a "substantial interference" with either Plaintiffs' person or property. *See Stikeleather*, 348 S.E.2d at 609. Accordingly, Plaintiffs' malicious prosecution claim fails.

Finally, when asked at oral argument whether Plaintiffs would have additional facts to plead as to special damages should the Court grant leave to amend their malicious prosecution claim, Counsel conceded that Plaintiffs do not. Accordingly, the Court will grant the Motion with prejudice with respect to Count III.

### C. Failure to Plead Abuse of Process Claim and Application of Statute of Limitations (Count I)

Finally, the Court finds that any untimeliness of Plaintiffs' abuse of process claim is not apparent from the face of the Amended Complaint, but that the allegations in support of the claim nonetheless fail to state a claim sufficient to survive a motion under Rule 12(b)(6).

#### 1. Statute of Limitations

"A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Plaintiffs concede that the operative limitations period for their abuse of process claim is Pennsylvania's two-year statute of limitations. *See* ECF No. 27 at 9-10. Plaintiffs' Complaint was filed on January 23, 2026. Therefore, to be within the statute of limitations, the claim must be based on an act of abuse of process that occurred on or after January 23, 2024. Plaintiffs appear to

allege three "acts" to support their claim, only one of which the Court finds may be timely and provided Plaintiffs can present additional factual allegations, may be an "act."[1]

According to the Amended Complaint, "during the pendency of the appeal Binswanger transmitted settlement demands and other communications . . . for the purpose of coercing payment, including communications transmitted on or after January 23, 2024." ECF No. 25 ¶ 187; *see also id.* ¶ 267. Though Plaintiffs do not allege the terms of the "coercive communications" in detail, they maintain in their Opposition to the Motion that the offer was a demand that Plaintiffs "pay the very commission the trial court had denied on the merits." *See* ECF No. 27 at 9.

Accepting Plaintiffs' allegations as true, which the Court must do at the motion to dismiss stage, the Court finds that a settlement demand made "on or after January 23, 2024" falls within the statute of limitations period. While discovery may or may not ultimately support Plaintiffs' contention that the settlement demand was made within the limitations period and that the claim is timely, at this stage, it would be premature to dismiss the claim on statute of limitations grounds without an evidentiary record (though not to dismiss for failure to plead facts sufficient to state a claim, as discussed below). The Court further declines to exercise its discretion to convert the Motion into a motion for summary judgment. While Defendant may pursue its statute of limitations

[1] In the interests of completeness, the Court is not convinced that a motion to extend time to file an appellant's brief – a motion which Plaintiffs consented to – qualifies as an abuse of process. *See* ECF No. 27 at 11. Regardless, this motion to extend time was filed on September 4, 2023, which is clearly outside the limitations period and cannot save Plaintiffs' claim. The Court is also not persuaded that holding an appeal filed outside the limitations period open, even "as leverage" as Plaintiffs maintain, qualifies as a timely "act" of abuse of process. *See id.* Plaintiffs concede that "[c]ontinuing a lawsuit, standing alone, is not abuse of process." *See id.*; *see also Fisher*, 2020 WL 5525235, at *9 (finding that continuing a motion for preliminary injunction rather than dismissing it does not satisfy the "act" requirement). Plaintiffs must invoke an affirmative act by Defendants that abused process within the limitations period, not merely that Defendants' conduct before the statute of limitations period continued to harm them during that period. *See Langman v. Keystone Nat'l Bank & Tr. Co.*, 672 F. Supp. 2d 691, 697-98 (E.D. Pa. 2009).

defense at the summary judgment stage if Plaintiffs are able to plead a valid cause of action, the Court will defer any ruling on this issue until the parties have conducted discovery.

2. Failure to State a Claim

The Court finds that Plaintiffs have not pleaded sufficient facts to allow the Court to reasonably infer that the settlement demand and other "coercive communications" were acts of abuse of process. When a settlement demand is "confined to its regular and legitimate function in relation to the cause of action stated in the complaint," it cannot satisfy the "act" requirement of abuse of process. *L. Offs. of Matthew K. Rogers, PLLC v. Fisher*, No. COA19-475, 2020 WL 5525235, at *9, 847 S.E.2d 82 (N.C. Ct. App. Sept. 15, 2020) (unpublished table decision) (quoting *Mfrs. & Jobbers Fin. Corp. v. Lane*, 19 S.E.2d 849, 853 (1942)). This is true even if the terms may be "egregious" to one party. *See id.* However, a settlement offer may cross the line and be an abuse of process where the proponent of the offer "seek[s] something to which they were clearly not entitled by law," or where the terms of the offer demonstrate an ulterior motive. *See id.* at *9-10 (applying *Stanback*, 254 S.E.2d at 624). In these situations, the offer is not "confined to its regular and legitimate function" in relation to the proceeding. *See id.* at *9.

Plaintiffs contend that the "settlement demands and other communications" were made "for the purpose of coercing payment" but do not allege the terms or conditions of those communications. *See* ECF No. 25 ¶ 187. The Court is not required to accept conclusory allegations as true. Accordingly, while the untimeliness of Plaintiffs' abuse of process claim is not apparent from the face of the Amended Complaint, the claim must be dismissed for failure to state a claim upon which relief may be granted, and Count III will be dismissed on that basis, with leave to amend to plead additional facts if a good faith basis exists to do so.

## CONCLUSION

For the foregoing reasons, Defendant's Motion will be granted, Counts II and III of Plaintiffs' Amended Complaint will be dismissed with prejudice, and Count I will be dismissed with leave to amend within fourteen (14) days, if a good faith basis exists to do so. An appropriate order will issue.

Dated: October 23, 2026

/s/ Antonio M. Pozos
**ANTONIO M. POZOS, J.**